UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SOURCE ONE FINANCIAL CORPORATION, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-00214 (VLB) |
| v. | : | |
| | : | |
| DINARDO AUTO SALES LLC; | : | March 3, 2014 |
| PASQUALE M. DINARDO; and | : | |
| JULIE DINARDO, | : | |
| Defendants. | : | |

<u>MEMORANDUM OF DECISION DENYING
DEFENDANTS' MOTION TO DISMISS [Dkt. #68]</u>

I.      **Introduction**

The Plaintiff, Source One Financial Corporation ("Source One"), a

Massachusetts corporation with a principal place of business in Norwell,

Massachusetts, brings this action for breach of contract and for various torts

related to the breach of contract, including unjust enrichment, conversion, and

unfair and deceptive trade practices in violation of CUTPA and the equivalent

Massachusetts statute, against Defendants, Dinardo Auto Sales LLC ("Dinardo"),

a Connecticut limited liability company with a principal place of business in

Bridgeport, Connecticut, and two of Dinardo Auto's officials: Pasquale M. Dinardo

("PMD") and Julie S. Dinardo ("JSD"), both Connecticut residents.  This action

was initially brought in the District of Massachusetts where the Plaintiff was

awarded default entry under Fed. R. Civ. P. 55(a) on July 16, 2012.  [Dkt. #9,

Motion for Entry of Default].  On July 25, 2012, the Plaintiff moved for default

judgment under Fed. R. Civ. P. 55(b), but when the court held a hearing on that

motion, the Defendants contested the court's exercise of personal jurisdiction over them.  [Dkt. #12, Motion for Default Judgment].  The court at that hearing suspected without explicitly holding that it had jurisdiction, but because the Defendants were appearing pro se, the court requested a motion to transfer the matter to Connecticut.  Subsequent to that hearing, the Defendants moved to set aside the default entry, but the court denied that order requiring the Defendants to comply with its request to transfer order.  [Dkt. #40, Motion to Set Aside Default; Dkt. #42, Order on Motion to Set Aside Default].  The Defendants then so moved and the court transferred the case to this Court on February 12, 2013.  [Dkt. #51, Transfer Order].  The Defendants have now moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction.

For the reasons that follow, the Defendants' Motion to Dismiss is DENIED.

II.    Background

The following facts and allegations are taken from the Plaintiff's complaint and supporting materials to its Opposition of the Defendants' Motion to Dismiss. Source One is a licensed indirect automobile sales finance company which purchases Retail Installment Contracts ("RICs") from used automobile dealers in Connecticut, Massachusetts, and Maine for the purpose of indirectly financing the purchase of used vehicles by consumers in those states.  [Dkt. #1, Complaint, ¶ 1].  Dinardo is a used automobile dealership, PMD is the owner of Dinardo, and JSD runs the day-to-day operations of the business and at all times relevant to the case executed documents on behalf of PMD and Dinardo.  [Dkt. #1, ¶¶ 2-4].

2

Around August 23, 2007, Dinardo and Source One entered into a Source One Financial Dealer Agreement (the "Agreement") under which the Defendants and Dinardo agreed to sell, and Source One agreed to buy, certain RICs arising out of the sale of motor vehicles by the Defendants. [*Id.* at ¶ 7]. The Agreement provided that Dinardo retained responsibility for the loans, but required timely payment to Source one, and PMD personally guaranteed performance under the Agreement. [*Id.*].

The Defendants executed the full Recourse Assignment Provision ("RAP") on the back of every RIC purchased by Source One. The RAPs provided that in the event of default by the consumer, Source One could assign the RIC back to the Defendants for full performance, meaning the payoff of the RIC. [Dkt. #1, at ¶ 8]. At the time Source One purchased the RICs from Dinardo, Source One and Dinardo also entered into Partial Purchase and Assignment contracts ("PPA") for each transaction, which explicitly set forth the amount due Source One if the RIC is paid in full. [*Id.* at ¶ 9]. Essentially, when Source One purchases an RIC, it is purchasing a stream of payments over a period of time consisting of principal and interest. [*Id.*]. For each RIC purchased by Source One, Source One's name was placed on the Title to the vehicle as the "First Lienholder"; Source One, therefore, holds a security interest in the vehicle until Source One receives the final installment payment due under the RICs and PPAs. [*Id.*].

Upon default by the consumer on the RIC, a "jeopardy letter" is sent to the consumer advising him or her that they are past due, and unless the required payment is made, the repossession process will commence. [*Id.* at ¶ 12]. If the

3

payment is made, no repossession occurs, but if no payment is made, Source One repossesses the vehicle and generally takes it back to Dinardo's lot."  [*Id.*]. The customer is given twenty-one days to redeem the vehicle by bringing the loan current and paying all towing and storage fees; if the vehicle is not redeemed within that time period, the vehicle is either put up for retail sale again or sold at auction on a wholesale basis.  [*Id.*].  If any deficiency remains on the RIC after the sale or auction, Dinardo is responsible to pay Source One the outstanding PPA amount and the repossession charges.  [*Id.*].

Pursuant to this commercial relationship, the parties were in continuous telephonic, electronic, and written communication.  [*Id.* at ¶  11].  PMD and JSD also came to Source One's offices in Massachusetts on numerous occasions for in person meetings concerning individual accounts.  [*Id.*].  Dinardo initiated contact in Massachusetts with Source One when it, through PMD and JSD, solicited the sale of their RIC to Source One.  [*Id.*].  In response to the motion to dismiss, the Plaintiff provided supplemental affidavits in which the affiant averred that PMD came "to Source One's offices in Massachusetts on at least three (3) occasions.  [They] met in the conference room and discussed vehicle repossessions" and other business matters directly related to the Agreement. [Dkt. # 71-3, Joseph Michael Cain Affidavit, ¶ 5].  It was also claimed that "[w]hen [PMD] came to Massachusetts, PMD stated to [Joseph Cain, Dealer Relationship Manager at Source One,] that he was also stopping by three (3) other Massachusetts finance companies to discuss Dinardo's contracts with them. The[ other companies] were Inofin Incorporated in Rockland, Persian Acceptance

4

Corporation in Wakefield, and OnPoint Financial Corporation . . . in Norwell." [*Id.* at ¶ 6]. Mr. Cain claimed that "[o]ver the course of seven (7) years, I spoke with PMD and [JSD] several times a week concerning contracts they wished to sell to Source One to finance purchases of motor vehicles by consumers from Dinardo in Connecticut." [*Id.* at ¶ 7]. Furthermore, "[o]n existing contracts purchased from Liberty [Motor Sales LLC, Dinardo's former corporate name and predecessor entity,] and Dinardo by Source One, JSD and PMD communicated with Source One on at least a weekly basis on their accounts over a period of seven (7) years, for a total of at least 364 contracts." [*Id.* at ¶ 8]. He also claims that "JSD executed numerous [RICs] on behalf of Liberty and Dinardo which were sold to Source One, some of which are the subject of the fraud claim[s] in this case." [*Id.* at ¶ 9].

Peter Papa, Sales Manager of Source One, averred that he had several in-person meetings with PMD in furtherance of the commercial relationship between the parties. "Between August 10, 2009 and August 25, 2009, [PMD] stopped into Source One's office to discuss his accounts with Source One generally, and increasing the charge for motor vehicle warranties on [RICs] sold by Dinardo to Source One." [Dkt. #71-2, Peter Papa Affidavit, ¶ 4]. Specifically, "[a] meeting took place in Source One's conference room between [Papa], [PMD], and Michael Parsons, Source One's CFO. [They] discussed [Dinardo's] accounts and the warranty issue extensively for approximately one (1) hour, and decided the charge would increase from $700 to $900." [*Id.* at ¶ 5]. PMD "also expressed a desire to meet and speak with Susan Clancy, a Source One employee who spoke

5

with [PMD] on a daily basis concerning [PMD's] accounts with Source One. [PMD] and Ms. Clancy met for a short period of time in Source One's offices." [*Id.* at ¶ 6]. Papa also claimed that "[o]ver the years, [PMD] would also stop by Source One at Christmas time to drop gift baskets off to Source One's collection, asset recovery, loan processing and sales departments." [*Id.* at ¶ 8]. "Over the course of 7 years, [Papa] spoke with [PMD] several times a week concerning contracts he wished to sell to Source One to finance purchases of motor vehicles by consumers from Dinardo in Connecticut." [*Id.* at ¶ 9].

Aside from purchasing the RICs, Source One serviced the contracts in Massachusetts "by making collection calls to consumers and conducting repossessions of vehicles in Connecticut." [*Id.* at ¶ 10]. Moreover, "[e]very month, Dinardo was sent a statement of the status of each of [its] accounts," and these statements were prepared and sent from Massachusetts. [*Id.* at ¶ 11]. In all, "Source One conducted business with Dinardo[, beginning with its predecessor entity Liberty,] from December 17, 2003 until April 8, 2010, and advanced Dinardo two million eight hundred and eight thousand five hundred dollars and eighty cents ($2,808,500.80) for the purchase of approximately five hundred and forty-six (546) [RICs] presented by Dinardo to Source One in Massachusetts." [*Id.* at ¶ 3].

At issue in this case is Source One's claim that several vehicles subject to a Source One owned RIC were improperly retained by Dinardo with outstanding amounts due under the PPA. [Dkt. #1, ¶¶ 15-22]. As stated previously, the Plaintiff was granted default entry before this action was transferred to this Court.

6

When the Defendants initially raised the argument that the District Court in Massachusetts lacked personal jurisdiction over them, the judge stated

> file with me a motion to transfer to Connecticut.  I am not vacating the default judgment.  I do believe that there is likely diversity jurisdiction and its likely worth more than $75,000 because they're located in Massachusetts and you're located in Connecticut and there's more than $75,000 at stake.  So there's likely to be federal jurisdiction.  There's likely to be personal jurisdiction simply because you did drive up here and have communications up here.  It's a very, very – its minimal contacts is the standard, and this is likely to be enough.  However, there's also a standard that if the heart of the suit is somewhere else, where the cars are and where the locus of the dispute is, I would transfer it down there so that he can be represented on how much.

[Dkt. #71-4, October 25, 2012 Hearing Transcript, p. 17].  Subsequent to the transfer order, the Defendants move again to vacate the default entry order claiming that the District Court in Massachusetts lacked personal jurisdiction over them.

   III.   **Legal Standard**

   "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "Where a complaint pleads facts that

7

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

A.  Personal Jurisdiction

The Defendants move to dismiss arguing that none of the Defendants "transacted" business in Massachusetts as required by the relevant long-arm statute.  [Dkt. #68, Motion to Dismiss, ¶¶ 2, 3].

8

"[A] judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment . . . Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree.  If that court did not have jurisdiction over the subject matter or the relevant parties, full fait and credit need not be given."  *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assn.*, 455 U.S. 691, 704-05 (1982).  This Court, therefore, can, and indeed should, review whether the Massachusetts District Court had personal jurisdiction over the Defendants before giving full fait and credit to that court's default entry order.

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a *prima facie* showing of personal jurisdiction. *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir. 1997); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  A plaintiff can make the requisite factual showing through its "own affidavits and supporting materials" which the Court may review and consider.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also Bolt v. Gar-Tec Prods. Inc.*, 967 F.2d 671, (1st Cir. 1992) ("The most commonly used method for determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the

9

plaintiff has proffered evidence that, if credited, is enough to support findings of fact essential to personal jurisdiction.").

A federal court sitting in diversity must apply the law of the state in which it sits. *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990); *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996) ("In diversity cases such as this, the district court's personal jurisdiction over a nonresident defendant is governed by the form state's long-arm statute.")  In Connecticut, "[t]o determine whether a foreign court lacked jurisdiction, we look to the law of the foreign state" in analyzing that question.  *J. Corda Const., Inc. v. Zaleski Corp.*, 98 Conn. App. 518, 524 (Conn. App. 2006); *see also*, *Bus. Alliance Corp. v. Fuselier*, 88 Conn. App. 731, 737 (Conn. App. Ct. 2005) (holding the same); *Milford Power Ltd. P'ship By Milford Power Assocs. Inc. v. New England Power Co.*, 918 F. Supp. 471, 478-79 (D. Mass. 1996) (on a motion to dismiss for want of personal jurisdiction, the plaintiff is obligated to offer evidence proving a prima facie showing of jurisdiction).

Under Massachusetts law, "[g]enerally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?"  *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979).  Even though the First Circuit has "construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution, [and] often sidestep[s] the statutory inquiry and proceed[s] directly to the constitutional analysis," this Court will only analyze the

10

application of the Massachusetts's long-arm statute as that is what the Defendants are contesting. *Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008).

### i.  Massachusetts Long-Arm Statute

The Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . ."  Mass. Gen. Law. Ch. 223A § 3.  "For jurisdiction under sec. 3(a), the facts must satisfy two requirements – the Defendant must have transacted business in Massachusetts, and the Plaintiff's claim must have arisen from the transaction of business by the defendant."  *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 551 (Mass. 1994).  The notion of "transacting business is broadly construed and easy to satisfy."  *Saturn Mgmt. LLC. V. GEM-Atreus Advisors, LLC*, 754 F. Supp. 2d 272, 277 (D. Mass. 2010).  Physical presence in Massachusetts is not required for "transacting business." *See Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008).   While it is not true that any communication sent into Massachusetts is sufficient to establish personal jurisdiction, just a few such acts may satisfy the long-arm statute.  *Saturn Mgmt. LLC*, 754 F. Supp. 2d at 278 (citing *M–R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 275 (D. Mass. 2008); *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)).

In *Bond Leather Co., Inc. v. Q.T. Show Mfg. Co., Inc.*, the First Circuit held that personal jurisdiction existed under Massachusetts's long-arm statute over a

nonresident defendant when the defendant "engaged in the purposeful act of guaranteeing . . . a Massachusetts corporation . . . payment for goods sold . . . [and when the defendant] mailed four letters to . . . Massachusetts, and received at least one telephone call from [the plaintiff] in the course of negotiating this guaranty." *Bond Leather Co., Inc. v. Q.T. Show Mfg. Co., Inc.*, 764 F.2d 928, 932 (1st Cir. 1985).  That court highlighted that physical presence is not required to fulfill the long-arm statute, but when the defendant mailed four letters to the jurisdiction related to the guaranty at issue in that case, he sufficiently "transacted business" in Massachusetts to permit an exercise of jurisdiction over him.

        In another case, the district court found jurisdiction over a nonresident defendant who was being sued by his Massachusetts-based law firm when the defendant "returned an engagement letter, which was drafted in Massachusetts and signed in New Hampshire, to the Plaintiff in Massachusetts[,] . . . attended a number of meetings related to his legal representation in Massachusetts[,] . . . spent a significant amount of time reviewing documents in a conference room in Plaintiff's Massachusetts office[, and] . . . made telephone calls and sent faxes and emails to the Plaintiff in Massachusetts." *Brown Rudnick Berlack Israels LLP v. Brooks*, 311 F. Supp. 2d 131, 133-34 (D. Mass. 2004).  Just as in those cases, here PMD and JSD are alleged to have faxed an executed agreement to Source One in Massachusetts, PMD is said to have attended several meetings in Massachusetts including one lasting more than an hour during which the change amount for the warranty was negotiated and ultimately raised from $700 to $900,

and both PMD and JSD are alleged to have been in constant telephonic and electronic communication with Source One for over seven years related to the Agreement and continual purchase of RICs.  These actions are quantitatively sufficient to subject Dinardo to personal jurisdiction under the long-arm statute.

Even though the amount of contact is sufficient, it must also be the case that the contacts relate directly to the contract at issue in the case, thus showing that the defendants attempted "to participate in the Commonwealth's economic life."  *BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P.*, 656 F. Supp. 2d 208, 215 (D. Mass. 2009).  In *BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P.*, the court found that a defendant who had "various communications" with a resident plaintiff "related" to the investment in dispute were sufficient to demonstrate that the defendants intended to transact business pursuant to the statute.  *Id.* Similarly here the communications that were sent by the Defendants to Massachusetts were directly related to the sale of RICs to the Plaintiff.  Moreover, PMD negotiated the modified warranty terms while in Massachusetts.  It cannot be denied that these actions are sufficient to satisfy the broadly construed long-arm statute.

The Defendants rely on *Raid, Inc. v. Andrew* as support for their argument that they were not transacting business in Massachusetts in fulfillment of the long-arm statute.  *Raid, Inc. v. Andrew*, No. CV000178828S, 2002 WL 315406 (Conn. Super. Feb. 8, 2002).  In that case, the court found that the statute did not grant jurisdiction over the individual officers of a company when it was alleged that the only contacts related to Massachusetts were that one of the defendants

signed and mailed three checks from Connecticut to Massachusetts and submitted a completed credit application to the plaintiff in Massachusetts and that the other defendant mailed one letter to the president of the plaintiff company in Massachusetts.  *Id.* at *1-2.  The court found that these were "isolated transactions in that there was no showing in the record of any previous or continuing relationship between the parties."  *Id.* at *6.  "Furthermore, the transaction had slight, if any, effect on commerce in Massachusetts."  *Id.*  The court, therefore, did not exercise jurisdiction over the individual defendants.  The facts in that case are easily distinguishable from the present matter.  Here, the alleged commercial relationship between the parties lasted for at least seven years, resulting in 546 RICs and substantial amounts of revenue for both parties.  This relationship was fueled by constant contact between Source One and Dinardo both through telephonic and electronic means as well as in person visits by PMD.  Moreover, the Defendants were aware that the Plaintiff was fulfilling its contractual obligations from Massachusetts.  It is alleged that when a consumer was delinquent, the Plaintiff called that consumer from its offices in Massachusetts, and if repossession was required, the repossession was planned and organized in Massachusetts.  Indeed, the Defendants must have been aware of this action because Source One does not appear to have any offices in Connecticut and the Defendants received account statements from Source One's office in Massachusetts.  This contact is not the type of isolated behavior found by the court in *Raid, Inc. v. Andrew* to be insufficient under the long-arm statute, but rather a persistent and directed type of conduct showing that the Defendants

14

had the intention of affecting the Massachusetts market.  Furthermore, the three other cases cited by the Defendants in their three-page motion to dismiss are distinguishable for the same reasons.  *See Larchmont Engineering and Irrigation, Inc. v. Jade Realty Corp*, 1996 Mass. App. Div. 187 (Mass. App. Div. 1996) ("The undisputed facts in this case establish that Jade's contacts with Massachusetts were limited exclusively to an initial telephone call from New Hampshire to Larchmont's Lexington, Massachusetts office, a return of the credit application by mail to Massachusetts, partial payment of Larchmont's invoices and a later telephone call complaining about late delivery of materials."); *Nichols Assocs., Inc. v. Starr*, 341 N.E.2d 909, 911-12 (Mass. App. Div. 1976) (only contact with the Massachusetts market was that the plaintiff decided to perform certain surveying related services in Massachusetts as opposed to Connecticut without any indication that it was anticipated that such services would be performed in Massachusetts and a few rare occasions when the defendant sent an employee to Massachusetts to pick up certain documents); *Telco Communs., Inc. v. N.J. Firemen's Mut. Benevolent Ass'n*, 669 N.E.2d 781, 784-86 (Mass. App. Div. 1996) (contract was clearly meant to be performed in New Jersey and all other contacts with Massachusetts are related to a few telephone calls between the parties largely about the operations in New Jersey).  Therefore, statutory jurisdiction was met over Dinardo, the defendant LLC.

However, "jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation."  *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008).  Therefore, even though the

Massachusetts court had jurisdiction over the defendant corporation, it does not necessarily have jurisdiction over the individual Defendants.  The court can exercise jurisdiction over the individual corporate officers under one of three theories: "(1) that jurisdiction may be based on their activities as corporate officers, acting on behalf of the corporation, (2) that jurisdiction may be based on their activities by disregarding the corporate form, or (3) that jurisdiction may be based on their activities operating independently of the corporation (e.g, by personally guaranteeing its obligations)."  *Id.*

PMD served as the individual guarantor of the Agreement, and, therefore, is subject to personal jurisdiction based on his own independent actions, especially since the negotiation of the guarantee was not separate from the negotiation of the Agreement itself.  *See Beaver Builders v. Schnip Bldg.*, 622 F. Supp. 1051, 1054 ("But even if the Court was not persuaded that the guarantees were negotiated partly in Massachusetts, this case still would come within the literal language of the Long Arm Statute.  This is because the negotiation and execution of the guarantees in fact was not the transaction of business separate and distinct from the negotiation of the underlying construction contracts.").  Moreover, his repeated presence in Massachusetts and targeted communications related to the Agreement are sufficient to subject him personally to Massachusetts jurisdiction as well.  *See Principal Mut. Life Ins. Co. v. Glick*, 3 Mass. L. Rptr. 175, 1994 WL 878819, at *2 (Mass. Sup. Ct. Dec. 14, 1994) ("Stephany traveled to Massachusetts on several occasions to further the plaintiff's business interest of Principal Mutual; her trips included meetings with

Glick.  Stephany also made telephone calls and wrote letters to Glick in Massachusetts.  Less activity has been found to constitute the transaction of business under Massachusetts longarm [sic] statute.").

As related to JSD, the Plaintiff argues that the Defendant is subject to the Massachusetts long-arm jurisdiction because she was involved in committing a tort against the Plaintiff, and a "corporate officer is liable for a tort committed by the corporation that employs him, if he personally participated in the tort . . . ." [Dkt. #71, Plaintiff's Opposition to Defendants' Motion to Dismiss, p. 12].  While this is an accurate statement of law, the issue here is not whether JSD could be liable for the tort, but whether the court had jurisdiction over her in the first place. This question is different.  *See Rosenthal v. MPC Computers, LLC*, 493 F. Supp. 2d 182, 193-94 (D. Mass. 2007) ("there appears to be a fundamental difference between the elements of vicarious copyright infringement . . . and the question of whether a defendant, whether directly or through an agent, transact[ed] any business in this commonwealth.") (citations and internal quotation marks omitted); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981) ("It is undisputed that an individual who commits a tort while acting in his capacity as a corporate officer or employee may be held personally liable. . . . At issue in this case is not whether such a person may be liable, but rather whether and when a person acting in New York in his capacity as a corporate employee may be subject to jurisdiction as an individual under the relevant provisions of the New York long-arm statute.")

Unfortunately for the Defendant, however, Massachusetts does not yet recognize the fiduciary shield doctrine as related to personal jurisdiction. *Morris v. UNUM Life Ins. Co. of Am.*, 66 Mass. App. Ct. 716, 721 (Mass. App. 2006) (defendant has "not offered any decisions of the appellate courts of Massachusetts in which this doctrine has been explicitly or implicitly accepted or rejected, and numerous decisions of the Federal District Court for the District of Massachusetts have suggested that Massachusetts has not adopted the doctrine."); *see also Nahigian*, 233 F. Supp. 2d 141, 158 (D. Mass. 2002) ("Massachusetts does not abide by the fiduciary shield doctrine.").  The doctrine generally precludes the assertion of personal jurisdiction over nonresident corporate officers where the individual defendant's acts were undertaken in their corporate rather than personal capacity.  Since Massachusetts does not apply the fiduciary shield doctrine, but still observes the general rule that jurisdiction over an officer cannot be based solely on jurisdiction over the corporation, jurisdiction "must be based on acts of the officer [sic] themselves, rather than simply the corporation, within the forum state."  *Nahigian*, 233 F. Supp. 2d at 158.  Therefore, in this case, just because the Massachusetts court had jurisdiction over the corporation and over PMD, it might not necessarily have had jurisdiction over JSD unless her actions would have subjected her to long-arm jurisdiction.  *Morris v. UNUM Life Ins. Co. of America*, 66 Mass. App. Ct. at 721 ("Morris's claims against Mirkin and Pringle, residents of Mains, are based on actions taken by them while transacting business as employees of UNUM at its Main office . . . the

question of personal jurisdiction over Mirkin and Pringle is to be decided on the basis of the nature and extent of their individual contacts with Massachusetts.").

In *Trans Nat'l Travel, Inc. v. Sun Pacific Intern. Inc.*, the court dismissed the fiduciary shield defense and held that it had jurisdiction over a defendant whose "contacts with Massachusetts include a number of telephone calls, letters, and facsimiles made and sent on behalf of Sun Pacific." *Trans Nat'l Travel, Inc. v. Sun Pacific Intern. Inc.*, 10 F. Supp. 2d 79, 93 (D. Mass. 1998). Similarly here, JSD is alleged to have contacted Source One several times a week over the course of the seven-year relationship; she executed on behalf of Dinardo several RICs which she then sent to Massachusetts; she, along with PMD, submitted her driver's license to Source One when completing the Source One Dealership Application; and she is alleged to have committed torts against Source One causing her to personally gain financially. Given these allegations, JSD's individual conduct also rendered her as "transacting business" under the long-arm statute.

Given this analysis, the long-arm statute was met for each of the three Defendants. The Defendants only argued that jurisdiction was not met under the long-arm statute; they do not dispute that constitutional jurisdiction has been satisfied. Even if they had, this Court finds that their contacts were sufficient under the minimum contacts standard and were sufficiently related to the conduct at issue in the litigation to create a foreseeable risk that the Defendants would be forced to litigate in Massachusetts. *See Harrell v. Repp*, 759 F. Supp. 2d 128, 131 (D. Mass. 2010) ("To rule on Defendant Sansone's Motion to Dismiss, the

court need go no further than the inquiry into the connection between her conduct and the litigation.") (citing *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).  All of the Defendants had sufficient contact with Source One in Massachusetts, and the alleged conduct stemmed directly from their commercial relationship at issue in this case.  Moreover, given the proximity between the states, and the fact that JSD went to Massachusetts regularly, it cannot be argued to be unreasonable for the Defendants to have litigated in that forum.

## IV.    Conclusion

For the foregoing reasons, the Defendants' [Dkt. #68] Motion to Dismiss is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 3, 2014